# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| KHRISTINA ZUNIGA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 2:17-CV-251-HAB |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's appeal of the Social Security Administration's Decision entered on September 4, 2015 (the "Decision"), denying Plaintiff Khristina Zuniga's ("Zuniga") application for supplemental security income ("SSI"). Zuniga filed her Brief (ECF No. 20) on January 18, 2018. Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner"), filed her Memorandum in Support of Commissioner's Decision (ECF No. 23) on March 29, 2018. Zuniga filed her Reply Brief (ECF No. 28) on May 29, 2018. This matter is now ripe for determination.

## PROCEDURAL HISTORY

Zuniga filed her application for SSI on July 8, 2013. The application was denied on October 3, 2013. Zuniga filed her Request for Reconsideration on or about November 5, 2013. That Request was denied on December 17, 2013. A Request for Hearing by Administrative Law Judge was filed on February 12, 2014. That hearing was conducted on July 23, 2015. On September 4, 2015, the ALJ entered the Decision.

Zuniga filed her Request for Review of Hearing Decision/Order on October 19, 2015. The Appeals Council denied the Request for Review on April 10, 2017. This constituted the final decision of the Commissioner. Zuniga timely filed her Complaint with this Court on June 2, 2017.

**ALJ'S FINDINGS[1]**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity ("SGA"). *Id.* The ALJ determined that Zuniga had not engaged in SGA since April 23, 2013.

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 416.920(c). The ALJ determined that Zuniga had the following severe impairments: intracranial injury; organic mental disorder (chronic brain syndrome); vertigo; affective disorder; anxiety disorder; obesity; and ataxia.

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ."

---

[1] In making her findings, the ALJ considered over 1,000 pages of medical records and evidence. Rather than recount all of that evidence in this section, the Court will address specific records and evidence as they become relevant to the legal analysis.

2

§ 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 416.920(d). But, if the impairment(s), either individually or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do, despite his limitations—to determine whether he can perform "past relevant work" (§ 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience" (§ 416.920(a)(4)(v)).

The ALJ determined that Zuniga did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that Zuniga had the RFC to perform sedentary work, including occasionally using stairs or ramps, balancing, stooping, or kneeling. Zuniga was not to use ladders, ropes, or scaffolds, crouch or crawl. Zuniga was further to avoid exposure to unprotected heights, moving mechanical parts, vibration or uneven or slippery surfaces. The ALJ determined that Zuniga was able to work in an environment with no more than moderate noise level and lighting limited to normal office lighting. Zuniga was further limited to a low stress job, defined as having only occasional decision making and very few changes in the work setting such that what the individual does on one day will be done on the next day. Finally, the ALJ determined that Zuniga could occasionally be around coworkers during the day but should not be involved in tandem tasks, and was capable of only occasional interaction with the public.

Given Zuniga's RFC, the ALJ determined that Zuniga was unable to perform any past relevant work. However, the ALJ determined that, considering Zuniga's age, education, work

experience, and RFC, there were jobs that existed in significant numbers in the national economy that Zuniga could perform. Therefore, the ALJ determined that Zuniga was not disabled.

## LEGAL DISCUSSION

**A.**     *Standard of Review*

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court examines the entire record; however, it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 305–06. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [the ALJ's] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**B.** *Analysis*

Zuniga raises two issues on appeal. First, Zuniga argues that the ALJ failed to follow Social Security regulations in evaluating the medical opinion evidence. Second, she argues that the ALJ's RFC assessment "fails to include all of Zuniga's functional impairments, contains serious factual mistakes, and is not supported by substantial evidence." (ECF No. 20 at 26). After a thorough review of the records, the Court concludes that Zuniga's arguments are not well taken. Accordingly, the Decision will be affirmed.

**1.     Medical Opinion Evidence**

Zuniga takes exception to the weight assigned by the ALJ to several medical opinions. Zuniga first asserts that the ALJ should not have assigned "some weight" to the opinions of Dr. Joshua Eskonen and Dr. J. Sands, state medical consultants, arguing that they were non-examining sources, that they were not familiar with portions of the medical records, and that their opinions were inconsistent with subsequent evidence. (*Id*. at 18). The fact that the state medical consultants were non-examining sources is irrelevant: an ALJ "may not ignore these opinions and must explain

5

the weight given to the opinions in their decision." *Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, SSR 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). Moreover, Zuniga does not identify what portions of the medical records with which the doctors were unfamiliar, nor does she identify the allegedly inconsistent subsequent evidence. Accordingly, the Court concludes that the ALJ did not err in weighing the opinions of Drs. Eskonen and Sands.

Second, Zuniga argues that the ALJ erred by giving "great weight" to the opinion testimony of Dr. Ken Lovko and Dr. Kenneth Neville, the state agency psychological consultants. Zuniga claims that these doctors were unfamiliar with key portions of her mental health records, and further that the ALJ's assessment of the doctors' opinions was flawed because the ALJ found that the opinions were "consistent" with Zuniga's "limited mental health treatment," an assertion Zuniga rejects. (ECF No. 20 at 19).

It is true, largely due to when certain medical treatment was rendered vis-à-vis the state agency psychological opinions, that Drs. Lovko and Neville would not have had access to certain information at the time of their opinion. However, it is unclear as to how access to this information would have helped Zuniga. She does not direct the Court to any specific portions of the records that would have affected the opinions, and the Court can find none. If anything, the later records support these opinions. Take, for instance, Zuniga's December 2013 hospitalizations, evidence Zuniga relies upon throughout her briefing. On December 11, 2013, Zuniga was diagnosed at discharge as having "subjective" balance deficits, tremor, and cognitive deficits, as well as depression, anxiety, chronic left chest pain, and glucose intolerance. (ECF No. 9 at 1340). She was then admitted for "safety and stabilization" on December 13, 2013. While the emergency

department believed that admission was necessary, it does not appear that the specialists agreed. The records note that a neuropsychological consult "felt that [Zuniga] was exaggerating her deficits," and believed that Zuniga's responses on a psychological test were "not . . . valid." (*Id*. at 1334).

Moreover, the state department medical opinions do not appear to be inconsistent with the evidence relied upon by Zuniga. For instance, Dr. Lovko opines that Zuniga has "mild" restrictions in her activities of daily living, and "moderate" difficulties in maintaining social functioning. (*Id*. at 95). Dr. Candice Hunter, one of Zuniga's treating psychiatrists, opined that Zuniga had "moderate" restrictions in her activities of daily living, and "slight" difficulties in maintaining social functioning. (*Id*. at 1318). Given the fact that terms like "slight," "mild," and "moderate," have no definitions in the regulations, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698–99 (7th Cir. 2016), the ALJ could appropriately view these two assessments as largely identical. Certainly, Zuniga does not identify the differences upon which she relies, or how those differences would have affected the outcome of her application.

Third, Zuniga lists several medical opinions that she claims the ALJ "failed to assign any weight." (ECF No. 20 at 20–22). This argument has no support in the record. Rather, the ALJ discussed the identified medical treatments and observations at length in the Decision. (ECF No. 9 at 27–39).

Fourth, Zuniga argues that the ALJ erred in giving "great weight" to the SSA's consultive psychologist, Dr. Todd Snyder. Zuniga primarily takes issue with the ALJ's determination that Dr. Snyder's opinion is consistent with other records noting "logical thought processes . . . intact memory . . . and ability to concentrate." (ECF No. 20 at 23). Zuniga describes this as a "material misstatement," and lists several instances where mental deficits are noted in the records. (*Id*. at

23–24). The Court does not find the ALJ's finding to be a "material misstatement." While Zuniga cherry-picks the 1,400+ page record for references that support her position, the ALJ provided a largely unbiased view of the medical records. Notably, the ALJ highlights records showing functional deficits *and* functional abilities. Just as an ALJ "cannot recite only the evidence that supports his conclusion while ignoring contrary evidence," *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016), she should also not cite only contrary evidence, which is apparently what Zuniga would prefer. Instead, an ALJ "may not selectively consider medical reports, especially those of treating physicians," nor can she "address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). The Court finds the recitation of the medical evidence provided by the ALJ to be far more comprehensive than that of Zuniga and finds no merit in her fourth argument.

Fifth, Zuniga expresses concerns regarding the ALJ's weighing of her examining specialists, specifically Drs. Hunter and Ungar-Sargon. Zuniga asserts that the ALJ "inconsistently evaluates the medical opinion" of Dr. Hunter because the ALJ gives "little weight" to Dr. Hunter's assessment of signs and symptoms and "some weight" to Dr. Hunter's overall opinion. (ECF No. 20 at 24). Initially, there is nothing inconsistent about the ALJ's evaluation; she is simply noting that some parts of Dr. Hunter's Medical Source Statement are deserving of more weight than others. In addition, the ALJ thoroughly explains her rationale for giving only some weight to Dr. Hunter's opinion, noting that Dr. Hunter only saw Zuniga for "15 minute medical checks, every 1–3 months" (ECF No. 9 at 1315), that Dr. Hunter's "signs and symptoms" checklist was inconsistent with her own clinical findings (*Id.* at 1315–16), that Dr. Hunter appeared to use terms in a way that is inconsistent with the Social Security regulations (*Id.* at 37), and that there was significant evidence in the record that was at odds with Dr. Hunter's assessment. (*Id.* at 38). This

is not a case where the ALJ rejected Dr. Hunter's opinion "because it did not align" with her own. *Meuser*, 838 F.3d at 911. The Court concludes that the ALJ's assessment of Dr. Hunter's opinion is both internally consistent and supported by the record.

Finally, Zuniga asserts that the ALJ erred in giving "little weight" to the opinion of Dr. Ungar-Sargon. On this argument, Zuniga misstates both the record and the law. In response to the ALJ's finding that Dr. Ungar-Sargon "did not identify any specific clinical findings of his own," Zuniga claims that his opinion, "by reference," identifies a list of findings including "confusion, headaches, vertigo, amnestic syndrome," and others. (ECF No. 20 at 25). This is not accurate. The list provided by Zuniga is *not* a list of findings by Dr. Ungar-Sargon, but instead a list of possible symptoms from intermittent carbon monoxide poisoning. (ECF No. 9 at 1323). Zuniga compounds this error when she states that the same list composes Dr. Ungar-Sargon's functional limitation findings. (ECF No. 20 at 25).

Moreover, even if this list did describe Zuniga's condition, it would not be a list of functional limitations. Evaluation of mental impairments under 20 C.F.R. § 404.1520a requires an ALJ to "first evaluate . . . pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." § 404.1520a(b)(1). Then, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." § 404.1520a(b)(2). The list cited by Zuniga is, at most, a list of "medically determinable mental impairments," but it is not a list of functional limitations resulting from those impairments. Dr. Ungar-Sargon's opinion, then, sheds little light on the relevant disability question, and was properly assigned little weight by the ALJ.

2.  **RFC Assessment**

Zuniga makes a number of objections to the ALJ's RFC assessment. The first four, consisting of claims that the ALJ improperly weighed medical opinion evidence and misstated the record (ECF No. 20 at 26–27) are addressed above. For the reasons set forth above, this Court concludes that the ALJ properly weighed the competing evidence and gave a thorough recitation of the facts that both supported and contradicted her findings.

Zuniga's fifth objection is that the ALJ gave the GAF scores in Zuniga's record "limited evidentiary value." (*Id*. at 27). It is hard to discern Zuniga's argument on this point. While it is true that the ALJ reported the GAF scores present in the records, and pointed out that certain findings were inconsistent with those scores, the ALJ ultimately determined that it would be inappropriate to give significant weight to any GAF score because of the rules promulgated by the SSA regarding revised medical criteria for evaluating mental disorders and traumatic brain injury. *See* 65 Fed. Reg. 507460-01; ECF No. 9 at 39. Since the ALJ's decision on this point is consistent with the controlling regulations, the Court finds no error.

Finally, Zuniga asserts that the ALJ failed to properly credit Dr. Hunter's opinion that she would miss three or more days per month of work because of her condition. (ECF No. 20 at 28). This opinion is found on Dr. Hunter's Medical Source Statement and takes the form of a checked blank. (ECF No. 9 at 1316). There is no explanation for this opinion nor does Dr. Hunter attach treatment records to her Statement to support the conclusions therein.

An opinion—whether it be judicial or medical or that of any expert "'has a significance proportioned to the sources that sustain it.'. . . An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Huey v. United Parcel Service, Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999). *Cf.* 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source

provides for an opinion, the more weight we will give that opinion."). So it is with Dr. Hunter's statement regarding Zuniga's potential missed work. Dr. Hunter does not explain this opinion, give any reason for reaching the opinion, or provide background evidence to support the opinion. It is, instead, nothing more than a line on a brief questionnaire and does not go into any depth regarding Zuniga's treatment. *See*, *e.g.*, *Flynn v. Astrue*, 563 F. Supp. 2d 932, 945 (N.D. Ill. 2008) (upholding ALJ's decision not to give treating doctor's opinion controlling weight where doctor provided no records and only filled out a questionnaire). Given the lack of support provided, the Court concludes that the ALJ was correct in not relying on Dr. Hunter's opinion regarding the "anticipated" number of days Zuniga would miss from work.

## CONCLUSION

For the foregoing reasons, the Decision (ECF No. 9 at 20-42) is AFFIRMED.

SO ORDERED on July 2, 2019.

                                    s/ Holly A. Brady
                                    JUDGE HOLLY A. BRADY
                                    UNITED STATES DISTRICT COURT